UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>   Plaintiff,<br>   v.<br>BOBBY WADE,<br>   Defendant. | Case No. 5:15-cr-00458-EJD-1<br><br>**ORDER DENYING DEFENDANT'S REQUEST FOR COMPASSIONATE RELEASE**<br><br>Re: Dkt. No. 169 |

Defendant Bobby Wade is an inmate in the custody of the Bureau of Prisons ("BOP") and is housed at USP McCreary in Pine Knot, Kentucky. Due to the ongoing COVID-19 pandemic, Defendant requests that he be compassionately released from prison pursuant to 18 U.S.C. § 3582. *See* Petition for 18 U.S.C. § 3582 ("Mot."), Dkt. 169; *see also* Reply to Response to Motion by Bobby Wade ("Reply"), Dkt. 176. The Government opposes this request. *See* United States' Opposition to Defendant's Motion for Compassionate Release from Custody ("Opp."), Dkt. 171. The Court determines that the matter is suitable for a decision without a hearing and submits the matter on the papers. For the reasons provided below, the Court **DENIES** Defendant's motion for compassionate release.

**I.      BACKGROUND**

Following a jury trial in May 2016, Defendant Bobby Wade was found guilty of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Judgment in a Criminal Case, Dkt. 125. At trial, the Government introduced evidence to establish the following:

On June 29, 2015, San Jose Police Department officers received a 911 call reporting that two men pulled a gun on someone. Dkt. 139 at ECF 15, 32–33. A responding officer saw two

Case No.: 5:15-cr-00458-EJD-1
ORDER DENYING DEFENDANT'S REQUEST FOR COMPASSIONATE RELEASE
1

men who matched the caller's description and ordered the men to the ground. *Id.* at ECF 33. One of the men complied; the other, Defendant, "took off running." *Id.* After briefly losing sight of Defendant, he was found and arrested in a parking lot near an eight-foot chain-link fence. *Id.* at ECF 36. While no firearm was found on Defendant, he was arrested because he had two outstanding warrants. *Id.* at ECF 42–43. Less than an hour later, a resident of the neighborhood where Defendant was arrested found a Smith & Wesson .380 caliber pistol in a parking lot on the other side of the fence from where Defendant was arrested. *Id.* at ECF 98.

A follow-up investigation revealed that once Defendant was booked into jail, he attempted to conceal evidence of his crime by calling his sister and, using coded language, asking her to recover the firearm he had discarded while fleeing. *Id.* at ECF 118–19; Dkt. 70-1 at ECF 12. Further investigation and testing showed that Defendant's DNA was on the recovered firearm. In addition, Defendant had sent several text messages in the weeks prior to his arrest referencing possession of a gun matching the description of the recovered firearm. Dkt. 140 at ECF 54.

On September 29, 2016, District Judge Ronald Whyte sentenced Defendant to 96 months of imprisonment to be followed by three years of supervised release. Defendant is currently in custody and is projected to be released August 5, 2022. *See Find an Inmate*, https://www.bop.gov/inmateloc/ (last visited June 15, 2020). Defendant is 39 years old and allegedly suffers from chronic asthma and obesity. *See* Reply at 2.

**II.     LEGAL STANDARD**

18 U.S.C. § 3582(c) provides that a court may not modify a term of imprisonment once it has been imposed except "upon a motion of the Director of the Bureau of Prisons, or upon motion of the defendant." A defendant may bring a § 3582(c) motion only after he has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons" to bring the motion on his behalf, or after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Upon such a motion, a court may modify a defendant's sentence "after considering the factors set forth in § 3553(a) to the extent applicable" if it finds "extraordinary and compelling reasons warrant such a reduction" and

Case No.:   5:15-cr-00458-EJD-1
ORDER DENYING DEFENDANT'S REQUEST FOR COMPASSIONATE RELEASE
2

"such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* § 3582(c)(1)(A)(i). The relevant Sentencing Commission policy statement sets forth several "extraordinary and compelling reasons." U.S. Sentencing Guidelines, § 1B1.13(1)(A) & cmt. 1. Namely, whether the defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id.* § 1B1.13 cmt. 1(A)(ii). The Commission also requires that the defendant not pose a danger to the safety of the community. *Id.* § 1B1.13(2).

### III.    DISCUSSION

As the Government concedes, Defendant has satisfied the administrative exhaustion requirement. *See* Opp. at 8. Therefore, the motion hinges on whether the risks presented by COVID-19, coupled with Defendant's health conditions, constitute "extraordinary and compelling reasons" for his release. *See United States v. Shields*, 2019 WL 2645028, at *2 (N.D. Cal. June 27, 2019).

The existence of the COVID-19 pandemic, without more, does not by itself constitute an "extraordinary and compelling reason" for release. Likewise, the mere fact that Defendant suffers from chronic conditions is insufficient. Chronic conditions that can be managed in prison are not a sufficient basis for compassionate release. *United States v. Ayon-Nunez*, 2020 WL 704785, at *2–3 (E.D. Cal. Feb. 12, 2020). Compassionate release is "rare" and "extraordinary;" the current national emergency does not change this. *See United States v. Mangarella*, 2020 WL 1291835, at *2–3 (W.D.N.C. Mar. 16, 2020) (noting that compassionate release is an extraordinary and rare event). Hence, generalized concerns about COVID-19, without other factors showing *present* extraordinary and compelling reasons to warrant modification of a sentence and immediate release from custody, are insufficient. *See United States v. Eberhart*, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020) ("General concerns about *possible* exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence . . . ." (emphasis added)); *see also United States v. Robinson*, 2020 WL 1982872, at *2 (N.D. Cal. Apr. 27, 2020) (prison had

Case No.: 5:15-cr-00458-EJD-1
ORDER DENYING DEFENDANT'S REQUEST FOR COMPASSIONATE RELEASE
3

nearly 100 confirmed coronavirus cases).  Indeed, Section 3582 only encompasses specific serious medical conditions, which specifically afflict an individual inmate—generalized threats to the entire population are insufficient.

Although the COVID-19 pandemic is an extraordinary world event, Defendant has failed to show that its impact on him specifically warrants his immediate release pursuant to 18 U.S.C. § 3582(c)(1)(A).  Defendant's motion asserts that he suffers from "serious medical conditions," specifically asthma, lung disease, diabetes, and PTSD.[1]  He also argues his race places him at an elevated risk.

An examination of Defendant's medical records, however, indicates that Defendant's primary health issues relate to his knees/other physical ailments that bear no relation to an increased risk from COVID-19.  *See* Declaration of John Bostic ("Bostic Decl.") ¶ 2 (filed under seal).  Indeed, while Defendant suffers from asthma, he recently told doctors that his asthma was under control, that he did not need an inhaler or other medication, and that is last asthmatic exacerbation was "many years ago." *Id.*, Ex. A at 6, 20 (noting that Defendant was not wheezing,); *cf. Coronavirus Disease 2019 (COVID-19)*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/asthma.html (last visited June 16, 2020) (noting that people who suffer from "*moderate* to *severe* asthma" are at an elevated risk of severe illness from COVID-19).  At worst, Defendant seemingly only suffers from mild asthma—Defendant's bare-bone pleading to the contrary does not rebut the medical records or his own statements that his asthma is resolved.

As to diabetes, recent blood tests submitted by Defendant show that he is not suffering from diabetes.  *See* Mot. at 4.  Defendant's blood results show that he is below the threshold for

---

[1] Only in rebuttal does Defendant argue that he also suffers from obesity.  This improperly introduces new information on reply.  However, even accepting Defendant's obesity, this along does not place him at an elevated risk of acquiring COVID-19. *See Groups at Higher Risk for Severe Illness*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last visited June 16, 2020) (listing *severe* obesity as a risk factor).  PTSD is not a risk factor.  While lung disease is a risk factor, there is no evidence that Defendant suffers from lung disease.

Case No.:   5:15-cr-00458-EJD-1
ORDER DENYING DEFENDANT'S REQUEST FOR COMPASSIONATE RELEASE
4

diabetes and is only at an "increased risk" for the disease. *Id.*; *see also* Bostic Decl., Ex. A at 25 (September 2018 blood results place Defendant in the "increased risk" category but significantly below the diabetes threshold). Defendant is on the standard diet, rather than the one formulated for diabetics. *Id.* at 18. Moreover, just two months ago, Defendant denied having diabetes. *Id.* at 6. Online CDC guidance indicates that individuals with type 1, type 2, or gestational diabetes may be at an increased risk from COVID-19, it issued no warning concerning individuals—like Defendant—with elevated, but non-diabetic, A1c levels. *See See Groups at Higher Risk for Severe Illness*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last visited June 16, 2020).

   Finally, Defendant is not entitled to compassionate release because of his race or ethnicity. The Court agrees with the Government that Defendant's claim that African Americans are "more open to catching" COVID-19 lacks support. Statistically speaking, Defendant is correct that African Americans (and other minority communities) are overrepresented among patients hospitalized for the illness. However, the CDC has *not* indicated that this is a result of inherently increased susceptibility to coronavirus. To the contrary, certain extrinsic factors that tend to exist in populations of color seem to increase the risk of COVID-19. *See COVID-19 in Racial and Ethnic Minority Groups*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/racial-ethnic-minorities.html (last visited June 16, 2020); *see also* Aaron Williams & Adrian Blanco, *How the Coronavirus Exposed Health Disparities in Communities of Color*, WASH. POST (May 26, 2020), https://www.washingtonpost.com/graphics/2020/investigations/coronavirus-race-data-map/. These factors include (1) living conditions, where members of minority groups may be more likely to live in densely populated areas, live further from grocery stores, and live further from medical facilities; (2) work circumstances, where members of minority may be more likely to work in essential service industries outside the home; and (3) specific underlying health conditions more prevalent in certain minority groups. *See id.* The first two factors are not applicable to Defendant as he does not live and work in the community, and Defendant's health conditions (as discussed above) do not place him at an elevated risk for severe

illness.

Furthermore, USP McCreary has only had two confirmed cases of COVID-19 and the two individuals have fully recovered. *See COVID-19 Coronavirus*, BOP, https://www.bop.gov/coronavirus/index.jsp (last visited June 16, 2020). There is no evidence of a larger outbreak. Additionally, the prison is taking significant measures to protect the health of its inmates and staff—all staff and inmates have been issued face masks and are strongly encouraged to wear the masks in public areas. Opp. at 17. All new BOP inmates are screened for COVID-19 symptoms and risk of exposure. Defendant's risk of acquiring COVID-19 is thus merely hypothetical and without more particularized concerns, Defendant cannot meet 18 U.S.C. § 3582's requirements. *See, e.g., Eberhart*, 2020 WL 1450745, at *2.

The Court does not mean to minimize the risks that COVID-19 poses in the federal prison system, especially for inmates with underlying health conditions. But, as other courts have noted, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). Defendant's motion for compassionate release is thus **DENIED.**

## IV.   CONCLUSION

For the above reasons, Defendant's motion for compassionate release is **DENIED.** Nothing in this Order should be construed as preventing Defendant from refiling a motion for compassionate release in the event of changed circumstances.

**IT IS SO ORDERED.**

Dated: June 16, 2020

EDWARD J. DAVILA
United States District Judge

Case No.: 5:15-cr-00458-EJD-1
ORDER DENYING DEFENDANT'S REQUEST FOR COMPASSIONATE RELEASE
6